**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | **CASE NO. 19-19710-RBR** |
| **LOUIS TINO FISHER**, | Chapter 7 |
| Debtor. | |

**CREDITOR THEODORE ROBERTS' RENEWED MOTION TO DISMISS CASE OR IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**

Creditor, Theodore Roberts ("Roberts"), by and through undersigned counsel, files *Creditor Theodore Roberts's Motion to Dismiss Case on in the Alternative, for Relief from the Automatic Stay*, and as grounds therefore, Roberts states as follows:

**Introduction**

This case was filed for no other purpose but to thwart the closing of the sale of a parcel of real property that Debtor, along with his co-owner, Loretta B. Leonard ("Leonard"), agreed to sell to Roberts pursuant to a written contract signed on December 18, 2018, calling for a closing on or before January 18, 2019. Debtor and Leonard, unjustifiably refusing to close the transaction, forced Roberts to bring an action for specific performance in Broward County, Florida's Seventeenth Judicial Circuit Court, obtaining a final summary judgment on July 1, 2019. *Order Granting Plaintiff's Motion for Final Summary Judgment and Final Judgment for Specific Performance*, a copy of which is attached hereto as Exhibit "A." The *Final Judgment* called for a closing no later than August 1, 2019. Nevertheless, to further delay and frustrate Roberts's entitlement to the subject property, Debtor filed a petition under Chapter 7 of the United States Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*) on July 22, 2019. Because the purpose for filing for bankruptcy was to avoid complying with the *Final Judgment* and closing the sale of the property, this case was clearly filed in bad faith and should therefore be dismissed.

**Undisputed Facts**

1. On December 18, 2018, Debtor, Leonard, and Roberts, entered into that certain *"AS IS" Residential Contract for Sale and Purchase* (the "*Contract*") in which Debtor and Leonard agreed to sell Roberts the real property located at 5440 NW 12th Court, Lauderhill Florida, more particularly described as:

> Lot 10, Block 8 of Falcon Subdivision Number One, according to the Plat thereof, recorded in Plat Book 54, Page 47 of the Public Records of Broward County, Florida.

(the "Property").

2. The *Contract* called for a closing on or before January 18, 2019.

3. Debtor and Leonard refused to close by the closing deadline and continued to refuse to close anytime thereafter.

4. As a result, Roberts filed an action for specific performance against Debtor and Leonard on March 20, 2019, in the Seventeenth Judicial Circuit in Broward County, Florida. Case No. 19-006197 (09) CACE (the "State Court Action").

5. Roberts moved for final summary judgment in the State Court Action and was granted the same by way of the *Final Judgment* attached hereto as Exhibit "A."

6. The *Final Judgment* required Debtor and Leonard to close the transaction no later than August 1, 2019. Ex. A, ¶ 6, at 3.

7. Instead, Debtor filed for bankruptcy on July 22, 2019. [ECF 1].

8. According to Debtor's initial schedules, Debtor only has two unsecured creditors. American Express, which Debtor states is owed $758.00 and the other being Roberts. *Schedule E/F: Creditors Who Have Unsecured Claims*, [ECF 1, at 19.]

9. And, according to Debtor's schedules of income and expenses, Debtor is able to meet all of his monthly expenses. *Schedule J: Your Expenses*. [ECF 1, at 28].

10. Debtor also claims the Property as his exempt homestead. *Schedule C: The Property You Claim Exempt*. [ECF 1, at 16]. (Simultaneously with the filing of this *Motion*, Roberts is filing an objection to Debtor's claimed homestead exemption in the Property.)

11. On September 1, 2019, Debtor filed amended schedules, amending only *Schedule G: Executory Contracts and Unexpired Leases* and *Debtor's Statement of Intention* to incorrectly state that the contract between Roberts and Debtor was executory, and thus, Debtor incorrectly states in that he intends to reject the same. [ECFs 14 and 15].

12. Debtor refiled the foregoing amendments on September 6, 2019 inasmuch as the amendments filed on September 1st did not include Debtor's declaration concerning the amended schedules, affirming as to their accuracy. [ECF 22].

13. Despite filing these amendments twice, neither of which included any additional creditors, thus, the only creditors are American Express and Roberts.

14. Roberts moved to dismiss the case for bad faith, [ECF 10], which was heard on September 4, 2019, at the conclusion of which, the Court denied the motion without prejudice. [ECF 23].

15. A report of no distribution was filed in this case by the Chapter 7 trustee on September 2, 2019. [ECF 17].

16. In light of the fact that Debtor has only one significant creditor, that being Roberts, whose claim is for specific performance, coupled with the fact that there is nothing to be administered in this case, Robert's renews his request for dismissal, or, in the alternative, requests relief from the automatic stay so as to be able to enforce in the Florida state court the specific performance *Final Judgment*.

## Memorandum of Law

I. **Dismissal of the Case**

    A. **Bad Faith**

Based on the undisputed facts noted above, it is clear that this bankruptcy case was filed in bad faith for it was filed for the sole purpose of circumventing the *Final Judgment* and thwarting Roberts' rightful entitlement to the Property.

> Although there is no precise test for determining bad faith, courts have recognized factors which show an "intent to abuse the judicial process and the purposes of the reorganization provisions." [*In re Natural Land Corp.*, 825 F.2d 296 (11th Cir. 1987)]. These factors include the timing of the filing of the petition, *id.*; whether the debtor is "financially distressed," *In re Waldron*, 785 F.2d 936, 939 (11th Cir.), *cert. dismissed sub nom. Waldron v. Shell Oil Co.*, 478 U.S. 1028, 106 S. Ct. 3343, 92 L. Ed. 2d 763 (1986); whether the petition was filed strictly to circumvent pending litigation, *Holtkamp*, 669 F.2d at 508; and whether the petition was filed solely to reject an unprofitable contract, *Waldron*, 785 F.2d at 939-41.

*In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1027 (11th Cir. 1989).

In *Dixie*, no different than the Debtor herein, the debtor Dixie was not in financial distress and as the court found, "It seems clear that Dixie entered bankruptcy to get out of its bad deal…and that the petition was filed as a 'diversionary tactic.'" *Id.* at 1027-1028. *See also In re Star Broad*, 336 B.R. 825 (Bankr. ND Fla. 2006). Similar to the court in *Dixie*, the court in *Star* found that the debtor had assets in excess of its liabilities and that it filed bankruptcy for the sole purpose of rejecting a contracted it had second thoughts about honoring. *Id.*, at 832. In both *Dixie* and *Star*, the courts found bad faith entitling the movants to relief from the automatic stay. Often discussed as grounds for seeking dismissal or relief from stay, if there are no other reasons to keep the case alive, such as to administer additional assets or otherwise consummate valid plan objectives, a finding of bad faith in the filing of the petition should result in the dismissal of the case. *Id.*; *see also Sabella v. Kassover (In re GCC Realty Co., LLC)*, No. 9:16-CV-81277, 2017 U.S. Dist. LEXIS 43221, at *26 (S.D. Fla. Mar. 24, 2017).

The instant case was filed under Chapter 7, therefore, there is no reorganization being contemplated or proposed by Debtor. Second, this case was filed just days prior to a court ordered sale of the Property in an attempt to circumvent and thwart the judicial process. And apart from Roberts, whose claim is for specific performance, Debtor lists only one other

unsecured creditor, American Express, which is allegedly owed $758.00. Moreover, according to Debtor's schedules of income and expenses, Debtor is able to meet his debts in the ordinary course of his affairs. Thus, there is no justified reason for Debtor to have filed for bankruptcy. Instead, Debtor filed this case in bad faith in an attempt to get out of the *Contract* that Debtor (and Leonard) had second thoughts about honoring.

### B. Rooker-Feldman Doctrine

Debtor's filing for bankruptcy is a collateral attack of a state court judgment. And collateral attacks of a state court judgment brought before a federal district court is barred under what has been come to be known as the Rooker-Feldman doctrine.

> The Rooker-Feldman doctrine is a limitation on the jurisdiction of the inferior federal courts. This limitation is intended to prevent the federal courts from hearing what are essentially appeals from state court decisions, which may only be heard by the United States Supreme Court.
> …
>
> The foundation of the Rooker-Feldman doctrine rests on two United States Supreme Court cases. In the first one, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), the Supreme Court rejected, as falling outside the jurisdiction of the district court, a suit that sought to have an Indiana state court's judgment "declared null and void." *Id.* at 414.

*Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1284 (11th Cir. 2018).

The *Feldman* decision, rendered decades later, *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), further refined the jurisdictional analysis by distinguishing those case in which a party is in essence asking a federal district, in this case a bankruptcy court, to effectively nullify a state court judgment — claims that the Court in *Feldman* declared outside of a federal district court's jurisdiction, to those cases in which the question is whether the state court's action violated a federal right, such as the right to due process under the Fourteenth Amendment to the U.S. Constitution, which fall within the jurisdiction of the federal district courts. *Id.* at 482-483.

In *Target Media*, *supra.* at 285, the Court of Appeals for the Eleventh Circuit noted that the Supreme Court has since revisited the Rooker-Feldman doctrine, and in 2005 declared that

the doctrine was being used too broadly. *Id.*; quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). In *Exxon Mobil* the Supreme Court held that:

> Rooker-Feldman bars only that class of cases in which federal litigants seek reversal of state court decisions. The doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. The Supreme Court has also clarified that "Rooker-Feldman is not simply preclusion by another name." *Lance v. Dennis*, 546 U.S. 459, 466, 126 S. Ct. 1198, 163 L. Ed. 2d 1059 (2006) (again stating that Rooker-Feldman applies "where a party in effect seeks to take an appeal of an unfavorable state-court decision," *id.*). The doctrine neither "override[s] or supplant[s] preclusion doctrine" nor "augment[s] the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Exxon Mobil*, 544 U.S. at 284.
> …
>
> To determine which claims invite rejection of a state court decision, we continue to apply an inquiry similar to the one that preceded Exxon Mobil. We continue to consider whether a claim was either (1) one actually adjudicated by a state court or (2) one "inextricably intertwined" with a state court judgment. *See Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam). And we have continued to describe a claim as being "inextricably intertwined" if it asks to "effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." *Id.* (internal quotation marks and citation omitted).

*Target Media* at 1285-1286.

### C. Two-party Dispute

Moreover, this case is a two-party dispute because, aside from Roberts, Debtor lists only American Express as a creditor and for a rather nominal amount; seven hundred and fifty eight dollars to be exact. [ECF 1, at 20]. And courts have routinely held that two-party disputes should not be resolved in the bankruptcy courts, particularly when the dispute is currently being litigated or has been litigated in another forum. "The bankruptcy court may dismiss a case when that court is used as 'an alternative to proceeding with pending State Court litigation to resolve what is essentially a two-party dispute.'" *Sabella,* at *21-22 (S.D. Fla. Mar. 24, 2017) (quoting *In re Kass*, 114 B.R. 308, 309 (Bankr. S.D. Fla. 1990)). Accordingly, Robert asserts that this case

should be dismissed. It was filed for the sole purpose of attempting to thwart the two-party dispute between the parties that was successfully litigated by Roberts in the Florida state courts. But should this Court decide that dismissal is not warranted, Roberts alternatively requests that this Court grant Roberts relief from the automatic stay to enforce Robert's *in rem* rights in the Property set forth in the *Final Judgment*.

### II.  Relief from the Automatic Stay

Upon the commencement of this case arose the automatic stay under § 362(a) of the Bankruptcy Code, barring creditors, including Roberts from pursuing their claims against Debtor or property of the Debtor. But in subsection (d) of § 362, Congress set forth the grounds upon which one may be granted relief from the automatic stay. "[The] automatic stay may be terminated for 'cause' pursuant to section 362(d)(1) of the Bankruptcy Code. The statute specifically provides that 'the lack of adequate protection of an interest in property' is cause to lift a stay. Further, a petition filed in bad faith also justifies relief from a stay." *Dixie Broadcasting*, at 1027 (citing *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir. 1987)).

Although, bad faith, as noted above, is grounds to either dismiss a case or grant relief from the automatic stay, the latter is often the path chosen by the court when there are additional reasons to keep the debtor in bankruptcy, such as to administer additional assets. *Dixie Broadcasting*, at 1029; and *Sabella*, at *26. Roberts asserts that there are no additional reasons for this case to remain in bankruptcy, particularly in light of the Trustee's filing of a report of no distribution, therefore, dismissal is proper, but if the Court holds otherwise, stay relief is nevertheless warranted because of Debtor's bad faith filing of this case.

This case was filed under Chapter 7, thus, there is no reorganization being sought by Debtor. There are no other creditors other than ostensibly American Express, which holds a rather modest claim against Debtor. It is therefore apparent that Debtor's filing of this case was done solely for the purpose of frustrating Roberts' legitimate rights to the Property and to hinder the state court litigation in which Roberts pursued and confirmed those rights. Therefore, in the

event Roberts' request for dismissal is denied, Roberts asks this Court for relief from the automatic stay so that Roberts may return to the Florida state court that issued the *Final Judgment* and enforce the same. As the case law cited above makes clear, Debtor's bad faith is cause under § 362(d)(1) that warrants the granting of stay relief.

WHEREFORE, Roberts, by and through undersigned counsel, requests that this Honorable Court grant this *Motion* by either dismissing this case or granting Roberts relief from the automatic stay allowing Roberts the right to enforce the *Final Judgment* in the court in which it was issued, and grant Roberts any further relief this Honorable Court deems just and proper.

Dated this 26th day of September, 2019.

**SLATKIN & REYNOLDS, P.A.**
Attorneys for Theodore Roberts
One East Broward Boulevard, Suite 700
Fort Lauderdale, Florida 33301
Telephone 954.745.5880
Facsimile 954.745.5890
jslatkin@slatkinreynolds.com

By: /s/ Jason E. Slatkin
    Jason E. Slatkin, Esq.
    Fla. Bar No: 040370

**Certificate of Service**

I hereby certify that a true copy of the foregoing has been furnished via CM/ECF to Christian J. Olson, Esq., attorney for Debtor, ecf@nowackolson.com, and U. S. Mail, first class, postage prepaid, to Louis Tino Fisher, 5440 NW 12th Court, Lauderhill, FL 33313 and American Express, Po Box 297871, Fort Lauderdale, FL 33329 26th day of September, 2019.

/s/ Jason E. Slatkin
Jason E. Slatkin, Esq.

# EXHIBIT "A"

**SLATKIN & REYNOLDS, P.A.**
One East Broward Boulevard, Suite 609, Fort Lauderdale, Florida 33301 ● Telephone 954.745.5880

IN THE CIRCUIT COURT OF THE 17TH
JUDCIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

THEODORE ROBERTS,
an individual,

CASE NO.: CACE-19-006197 (09)

    Plaintiff,

v.

LOUIS T. FISHER, an individual, and
LORETTA B. LEONARD, an individual,

    Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S
## MOTION FOR FINAL SUMMARY JUDGMENT AND
## FINAL JUDGMENT FOR SPECIFIC PERFORMANCE

This case having come before this Court on the Plaintiff's Motion for Final Summary Judgment and the Court having heard argument of counsel and upon a review of the record evidence, hereby **ORDERS AND ADJUDGES**:

### Specific Performance

1. On July 1, 2019, this Court heard oral argument on Plaintiff's Motion for Final Summary Judgment on Count I of the Complaint seeking specific performance of the real estate contract between Plaintiff and Defendants. Based upon the pleadings and summary judgment evidence in the record, there is no genuine issue as to any material fact and Plaintiff is entitled to a judgment as a matter of law as follows:

    a. This is an action for specific performance and breach of contract as to the terms of a Residential Contract for Sale and Purchase.

    b. The court has jurisdiction over this matter and the parties and venue is proper.

    c. The Residential Contract for Sale and Purchase attached to the Complaint as Exhibit "A" and to Plaintiff's Motion for Final Summary Judgment (the "Contract") is a valid, legally binding, and fully enforceable contract by and between the Plaintiff, as buyer, and Defendants, as sellers, for the purchase and sale of that certain property located at 5440 Northwest 12th Court, Lauderhill, Florida 33313 (the "Property") which is legally described as follows:

> **Lot 10, Block 8, of Falcon Subdivision Number One, according to the Plat thereof, as recorded in Plat Book 54, Page 47, of the Public Records of Broward County, Florida.**

        d.      The Contract required the Defendants to close on the Property on January 18, 2019 and to convey marketable title to Plaintiff.

        e.      In or about January 2019 and again through counsel, in writing, on March 4, 2019, the Defendants informed Plaintiff that they refused to close on the Property and convey title, and in fact have not done so. Defendants are therefore in breach of the Contract.

        f.      Plaintiff was in compliance with his obligations under the Contract, and was at all material times ready, willing, and able to pay the purchase price and close on the Property.

        g.      Plaintiff has sufficiently refuted all of Defendants alleged affirmative defenses raised in the respective Answer and Affirmative Defenses filed by each individual Defendant. The record evidence, including the Contract, Plaintiff's Affidavit (Exhibit "B" to Plaintiff's Motion), and the Affidavit of Escrow Deposit (Exhibit "C" to Plaintiff's Motion) refute all defense allegations and, additionally, such affirmative defenses are deemed legally insufficient.

        h.      Plaintiff is granted summary judgment entitling him to specific performance pursuant to paragraph 15(b) of the Contract. Plaintiff has no adequate remedy at law, and justice requires an order of specific performance here.

## **Damages**

2.      As a direct result of Defendants' breach of the Contract, Plaintiff has suffered compensatory, incidental, and consequential damages and the Court finds:

        a.      Under Florida law, "damages awarded in specific performance are a way of compensation to adjust the equities between the parties to place them in a position that they would have occupied had the contract been timely performed… The Court is really requiring an accounting in its attempt to adjust the equities between both parties in order to return them to their relative position at the time of closing." *See Wiborg v. Eisenberg*, 671 So.2d 832 (Fla. 4th DCA 1996); *Walker v. Benton*, 407 So.2d 305 (Fla. 4th DCA 1981).

        b.      As part of the remedy of specific performance, the purchase price a plaintiff is to pay for the property is reduced by the amount of the damages the Defendants owe Plaintiff for their failure to comply with the contract. *See Boca Palm Invs., Inc., v. Jerdon, Inc.*, 568 So.2d 505 (Fla. 4th DCA 1990).

        c.      Plaintiff alleges incurred damages related to Defendants failure to close on the Contract to include:

   i. Round trip travel costs from Illinois to Florida for Contract closing date and for the Summary Judgment hearing.
   ii. Hotel accommodations and related expenses for Contract closing date.
   iii. Updated appraisal costs and any additional costs incurred because of the delayed closing date as required by the Plaintiff's Lender and Closing Agent.
   iv. Any other related damages according to proof.

**IT IS THEREFORE ORDERED AND ADJUDGED** as follows:

1. Final Judgment is entered against Defendants Louis T. Fisher and Loretta B. Leonard and in favor of Plaintiff, Theodore Roberts on Plaintiff's claim for specific performance.

2. Defendants Fisher and Leonard are ordered to specifically perform their obligations under the Contract and to convey marketable, insurable title to and close upon the sale of the Property to Plaintiff for $252,000.00. *and provide possession.*

3. Defendants will provide Plaintiff with a credit at closing equal to all amounts evidenced by Plaintiff as related to and as a result of Defendants' failure to perform under the Contract (the "Credit"). Plaintiff's damages will be set at a subsequent hearing, with the cost and fees incurred at that hearing included in the Credit, if the Credit is not otherwise agreed upon by the parties.

4. Defendants Fisher and Leonard are hereby ordered to allow Plaintiff, Plaintiff's inspector, appraiser and any other retained professionals, access to the Property upon 48 hours' notice, for appraisal, inspection and any other reasonable purposes at a mutually coordinated date and time during normal business hours within five (5) calendar days from the date of this Order.

5. Plaintiff is legally entitled to and Defendants are ordered to pay Plaintiff's reasonable attorney's fees and costs incurred from the date of Defendants breach, January 18, 2019 through and including the date of this Order and for any additional litigation necessary to enforce the terms of this Order. Jurisdiction is specifically retained by this Court for the purpose of determining the amount of attorney's fees, costs and other damages incident to Defendants' breach. Any amounts awarded will be included as a credit to Plaintiff at the time of closing. If the Defendants' net proceeds are less than the amount of fees, costs and other damages owed to Plaintiff, then Defendant will provide additional funds at the time of closing.

6. Defendants Fisher and Leonard are hereby ordered to close on the Property by August 1, 2019. If Plaintiff's lender requires additional time to prepare Plaintiff's loan package and deliver that package to the Closing Agent, then the date of closing will be extended accordingly.

7. The Court retains jurisdiction for the purpose of enabling any of the parties to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to construe or carry out this Final Judgment, for the enforcement of any noncompliance, and for the punishment of any violations.

**DONE AND ORDERED** in Chambers in Ft. Lauderdale, Broward County, Florida, this ___1st___ day of July 2019.

Jeffrey R. Levenson
JUL 0 1 2019
True Copy

HONORABLE JEFFREY R. LEVENSON
CIRCUIT COURT JUDGE

**Copies to:**

Mitchell B. Haller, Esq. for Plaintiff, mhaller@klaubergoldman.com
Louis T. Fisher, Defendant, 5440 NW 12 Ct., Lauderhill, FL 33313
Loretta B. Leonard, Defendant, 5440 NW 12 Ct., Lauderhill, FL 33313