UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

LOUIS TINO FISHER                                                                  Case No.: 19-19710-SMG
                                                                                   Chapter 13

        Debtor(s).
_____/

**DEBTOR'S RESPONSE TO CREDITOR THEODORE ROBERTS'
RENEWED MOTION TO DISMISS CASE, OR IN THE ALTERNATIVE,
FOR RELIEF FROM TE AUTOMATIC STAY (ECF 24)**

      COME(S) NOW the Debtor, LOUIS TINO FISHER, by and through the undersigned attorney, and files this response to Creditor Theodore Roberts' Renewed Motion to Dismiss Case, or in the Alternative, for Relief from the Automatic Stay (ECF 24) and would state as follows:

**FACTUAL BACKGROUND**

1.    The Debtor, and property co-owner Loretta Leonard, entered into a prepetition contract with Creditor to sell his homestead property located at 5440 NW 12th Court, Lauderhill, FL 33313 on December 18, 2018. The contact was scheduled to close on or before January 18, 2019.

2.    The Debtor and Co-Owner refused to close by the deadline and at all times thereafter.

3.    As a result, Creditor filed an action for specific performance in the Seventeenth Judicial Circuit in Broward County Florida, Case No. 19-006197 (09) CACE. Creditor was granted summary judgment, which required the Debtor and Co-Owner to close on the property no later than August 1, 2019.

4.    The Debtor filed this Chapter 7 case on July 22, 2019.

5.    The Debtor listed Theodore Robert's as a creditor in the amount of $252,000.00 on Schedule F (ECF 1, Page 22 of 45), which is the contract sale price of the homestead property.

6. The Debtor's amended schedules additionally reject the executory contract to sell the homestead property.

6. The Debtor is a disabled veteran and is confined to a wheelchair. The Debtor's income consists of VA disability and social security. The homestead property which is the subject of this dispute is specifically equipped for Mr. Fisher's disabilities, and it is very difficult for him to move to another property quickly or find a replacement home that suits his disability needs.

7. The Debtor was unrepresented in the state court specific performance lawsuit. The Debtor requested additional time from the state court judge to retain counsel, but was denied, and the lawsuit proceeded quickly to summary judgment.

8. The Debtor's refusal to close on the property was based on the fact that he believed he was tricked into selling the property by the realtor. The Debtor and the Co-Owner were told by the realtor that they could move to another, specific property which suited Mr. Fisher's disabilities without coming up with any out of pocket monies. This was the only reason they agreed to the sale at the sale price, and after they signed the sale contract it was apparent that no such other property was available and they had nowhere to go.

## ARGUMENT

A. **Bankruptcy Rule of Law Regarding Specific Performance**.

Many bankruptcy courts have concluded a right to specific performance is a claim dischargeable under the Bankruptcy Code. In the case *In re: Rabin*, 05-121395-RAM (opinion at ECF 33) Judge Mark concluded that a specific performance claim under Florida law is a "claim" under §10l(5) of the Bankruptcy Code and is therefore dischargeable. Claim is defined in §101(5) to include "the right to an equitable remedy for breach of performance if such breach gives rise to

a right to payment ..." §101(5)(B).

It is clear from the Sales Contract (Exhibit "A" attached to this response) that the Buyer and the Seller already agreed upon the remedies, including the right to seek monetary damages, if one of the parties breached the Contract. Line 333 of the Contract (Page 7 of the Sales Contract) specifically addressed the default of the Seller. The agreed upon Contract specifically gave the Buyer the right to "...seek to recover such damages OR seek specific performance" (Line 336 - 337 of the Contract).

The Contract did provide for a remedy other then specific performance. The Buyer could have initiated a law suit for monetary damages but choose not to in the State Court proceeding because they wanted the house, not because that was their only legal remedy. A review of the State Court case indicates that no claim for monetary damages were sought in the lawsuit, it was solely a lawsuit for specific performance. As such, as the Buyer's right did include the right to monetary damages, which means the Seller has a dischargeable claim in the bankruptcy proceeding.

B. **Bad Faith**.

This case was not filed in bad faith and should not be dismissed accordingly. Additionally, there is no basis to grant relief from automatic stay. In this case, the Debtor filed because he had no other state law remedies to stop the forced sale of his homestead property.

Courts have concluded that claim should be construed broadly. Ohio v. Kovacs, 469 U.S. 274, 279 (1985); Epstein v. Official Comm. Of Unsecured Creditors, 58 F.3d 1573, 1576 (11 Cir. 1995). Further, Legislative history supports the view that equitable remedies such as specific performance may be treated as claims.

Section [101(5)(B)] ... is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable

remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a judgment for specific performance may be satisfied by an alternative right to payment in the event performance is refused; in that event, the creditor entitled to specific performance would have a 'claim' for purposes of a proceeding under title 11. Since the breach of the contract at issue here gave rise to a right to payment under Florida law, Creditor holds a claim that was discharged in this bankruptcy case.

In the case of In re Aslan, 65 B.R. 826 (Bankr. C.D. Cal. 1986), United States Bankruptcy Court, C.D. California, the bankruptcy court came to the same conclusion in the context of a Chapter 11 case, but the analysis can be applied to this case. The initial issue is not whether this case should be dismissed but whether rejection of an executory contract, where state law allows a remedy of specific performance, relieves the Debtor from the requirement to specifically perform the contract. In other words, if the Court were to allow rejection of the contract, the result would be that Creditor is left only with an unsecured pre-petition claim. The present case requires the Court to determine the effect of rejection of a contract when state law allows a breach of contract to be remedied by specific performance.

11 U.S.C. § 365(g) states that rejection of an executory contract constitutes a breach of that contract immediately before the date of filing of the petition. This provision does not deal with the remedies involved, but establishes the time that the breach is deemed to have occurred.

11 U.S.C. § 502(g) specifies that a "claim" arising from rejection of an executory contract shall be determined and allowed under §§ 502(a), 502(b) or 502©, or should be disallowed under §§ 502(d), or 502(e), as if such claim had arisen before the date of filing of the petition. So if the breach of an executory contract creates a "claim," it is discharged.

11 U.S.C. § 101(11) defines the term "debt" to mean a liability on a claim.

11 U.S.C. § 101(4)(B) defines a "claim" in the case of an equitable remedy to exist only if the breach of performance gives rise to a right of payment. Nowhere in the definition of claim does it include an equitable remedy which does not give rise to a right of payment. Because Creditor's claim is a debt subject to discharge, this is only a remedy the Debtor can get by filing this Chapter 7 case and it is not in bad faith.

   C.  **<u>Specific Performance is an Equitable Remedy</u>**.

Florida law regarding specific performance is over 100 years old and is well settled law. Although the Courts in Florida and the United States have grappled with specific performance and when it should be applied, there is one common underlying theme. Specific performance is only warranted when no other legal remedy could make the damaged party whole.

That clearly is not the case here. In fact, the opposite argument in favor the Debtor can and should be raised. The Debtor is a disable veteran who is confined to a wheel chair for the rest of his life. The Debtor has customized the house to need his needs for his disability. Forcing the Debtor out of his home so the an investor can buy his home, rehabilitate the home and flip the home to a new Buyer hardly seems like a case where specific performance is warranted. It appears that forcing the Debtor to sell his property would have a disproportionate negative effect on the Debtor not the Buyer.

The only reason the Debtor was selling his house was because the realtor who had the listing agreement told the Debtor that he could sell his home and move into a better home with less then $5,000.00 total in out of pocket expenses. As a result, the Debtor signed the sales contract. However, after the Contract was signed, it became obvious to the Debtor and his wife that they were not going to be able to buy a home under the circumstances dictated by the realtor. It was going to cost the Debtor substantially more money then that to sell the house and move into another home.

The representations made the realtor were not accurate. Once the Debtor realized that he would have to come up with substantially more money to buy a new home, and to make the necessary customizations, the Debtor realized that selling his home was a tremendous mistake. The Debtor then informed the Buyer that they were not going to sell. At no time after the Seller informed the Buyer of the cancellation of the Contract, did the Buyer ever make a demand to the Debtor regarding financial damages. From day one, all the Buyer has been after was the home. The Debtor could not afford an attorney and was unrepresented in the State Court proceeding. As no defenses to the specific performance lawsuit were raised, the State Court Judge entered the final judgment regarding the specific performance. It is the understanding of the undersigned, that at no time in the State Court proceeding did the Court hear or review any factually evidence regarding the necessity of the equitable remedy provided by the State Court.

    D.    **The Good Faith of the Instant Motion**.

The Creditor filed a renewed motion to dismiss after the Creditor's prior Motion to Dismiss was denied without prejudice. The Creditor fails to raise any new facts or legal basis to bring the new Motion. The Creditor is simply trying to take advantage of the appointment of a new Judge to the Court. The Creditor is relying solely on the fact that the Court has a new Judge in an attempt to get a different ruling then the one already issued by this Court in this case under the same facts.. The Debtor believes that this Motion has been brought in bad faith by the Creditor.

Wherefore, for all of the reasons stated within, the Debtor requests that the Creditor's Motion to Dismiss be denied with prejudice and the Court should grant further relief as just and proper under the circumstances.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Response was served in the manner described below, on  October 20, 2019 , upon:

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1.

<u>Via CM/ECF</u>:

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Jason Slatkin, Esq. on behalf of Creditor Theodore Roberts
jslatkin@slatkinreynolds.com, imalcolm@slatkinreynolds.com;r53227@notify.bestcase.com

Kenneth A Welt
fl10@ecfcbis.com;pacerfilings@gmail.com;kaw@trustesolutions.net;court@trusteeservices.biz;lilly@trusteeservices.biz

*Law Offices of*
NOWACK & OLSON, PLLC
Attorney for Debtor(s)
8551 Sunrise Blvd., Suite 208
Plantation, FL 33322
(954) 349-2265

/s/ Christian J. Olson
CHRISTIAN J. OLSON, ESQ.
Florida Bar Number: 121436